UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARYL A. HANIFAN,

       Plaintiff,

  -against-            5:11-CV-0534 (LEK/TWD)

JO-ANN FABRIC AND CRAFT, d/b/a
JO-ANN STORES, INC.,

       Defendant.

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

*Pro se* Plaintiff Daryl A. Hanifan ("Plaintiff") alleges that her former employer, Defendant Jo-Ann Stores, Inc., d/b/a Jo-Ann Fabric and Craft[1] ("Defendant"), breached an implied contract arising from an internal code of conduct and other communications. Dkt No. 1-1 ("Complaint"). Presently before the Court is Defendant's Motion for summary judgment and costs. Dkt. No. 27 ("Motion"). For the reasons that follow, the Motion is granted in part and denied in part.

### II. BACKGROUND

Plaintiff began working for Defendant, a crafts and fabrics retailer, in 2000. Dkt. Nos. 27-4 ("SMF") ¶ 6; 27-3 ("First Scadden Declaration") ¶¶ 3, 14. Two years before Plaintiff's hiring, Defendant issued an employee handbook. SMF ¶¶ 7-8; Dkt No. 27-10 ("1998 Handbook"). The 1998 Handbook contained a disclaimer stating that it was a "only a guideline" that Defendant

---

[1] Defendant notes that the caption incorrectly identifies it as "Jo-Ann Fabric and Craft, d/b/a, Jo-Ann Stores, Inc." when it is in fact "Jo-Ann Stores, Inc., d/b/a Jo-Ann Fabric and Craft." Dkt. No. 27-4 ("SMF") at 1.

"would revise . . . as necessary." 1998 Handbook at 2 ("1998 Disclaimer").[2] The 1998 Disclaimer also stated the following:

> Nothing in this Handbook is intended or may be construed as a contract, expressed or implied; and this Handbook cannot be relied upon as creating any rights, contractual or otherwise. All associates of the Company are employees-at-will whose employment may be terminated by the Company or themselves with or without notice or cause unless the at-will arrangement is modified by a written agreement signed by both the associate and the President of the Company. No associate may rely on any statement or promise to the contrary.

Id. Plaintiff was issued a copy of the 1998 Handbook soon after her employment began. SMF ¶ 10. Upon receipt, she signed and returned an acknowledgment form in which she affirmed her understanding that: (1) the policies contained in the 1998 Handbook, as well as the 1998 Handbook itself, created no contractual rights and did not constitute a contract; (2) she was an employee-at-will who could be terminated at any time for any reason; and (3) her status as an employee-at-will could be changed only by a written contract signed by Defendant's president, and thus she could not rely on any representations to the contrary. Id. ¶¶ 9-10; Dkt. No. 27-11 ("1998 Acknowledgment").

In or before 2005, Defendant issued a Code of Business Conduct and Ethics to its employees. SMF ¶ 11; Dkt. No. 27-12 ("2005 Code"). Among other provisions, it informed employees that it was their responsibility to report violations of the 2005 Code to management. 2005 Code at 2.[3] The 2005 Code also contained a non-retaliation provision: "A Team Member[4] will not be disciplined, lose his/her job, or be subject to retaliation in response to asking questions or voicing concerns about the Company's ethical or legal obligations, so long as the Team Member is

---

[2] The pagination corresponds to the page numbers assigned by ECF.

[3] The pagination corresponds to the page numbers assigned by ECF.

[4] In or about 2005, Defendant changed the term it used for employees from "Associate" to "Team Member." SMF ¶ 12.

2

acting in good faith." Id. Finally, the 2005 Code indicated that employee reports of Code violations would be investigated. Id. at 3.

Although the 2005 Code may have initially been issued as a stand-alone document, it was re-issued in 2005 alongside an updated version of the employee handbook. See SMF ¶¶ 11, 13; Dkt. Nos. 27-13 ("2005 Handbook") at 5[5] (noting that the 2005 Code had been included in the pocket of the 2005 Handbook); 30-1 ("SMF Response") ¶ 13 (acknowledging that Plaintiff received the 2005 Handbook and 2005 Code in the same package of documents). The 2005 Handbook contained a disclaimer highly similar to the 1998 Disclaimer—it noted Defendant's ability to change the Handbook's policies at any time, the non-contractual nature of the Handbook, and the at-will employment status of employees. See 2005 Handbook at 3, 9 ("2005 Disclaimer").

As she did with the 1998 Handbook, Plaintiff signed and returned an acknowledgment form included with the 2005 Handbook:

> I have received the Team Member Handbook and the Code of Business Conduct and Ethics . . . . I understand and agree that the policies stated in the Handbook are only guidelines and that I cannot rely upon them as creating any rights, contractual or otherwise. I understand and agree that the Handbook cannot be considered a contract, express or implied.

2005 Handbook at 2 ("2005 Acknowledgment") (together with the 1998 Acknowledgment, "the Acknowledgments"); SMF ¶ 14. The 2005 Acknowledgment also covered the signee's at-will employment status and stated that "[c]ompany policies and procedures may change."

In February 2009, Defendant issued a new version of its handbook and code of business conduct. See SMF ¶ 16; Dkt. No. 31-1 at 3-44[6] ("2009 Handbook"); id. at 45-57 ("2009 Code").

---

[5] The pagination corresponds to the page numbers assigned by ECF.

[6] The pagination corresponds to the page numbers assigned by ECF.

3

The 2009 Code was issued as an appendix to the 2009 Handbook. See 2009 Handbook at 8; Dkt. No. 31-1 at 1 ("Second Scadden Declaration"). See generally Dkt. No. 31-1.[7] At the end of the 2009 Handbook and its appendices, Defendant included a one-page disclaimer nearly identical to the 2005 Handbooks' disclaimer covering Defendant's right to change its policies at any time, the non-contractual nature of the Handbook, and the at-will status of employees. See Dkt. No. 31-1 at 62 ("2009 Disclaimer"); Dkt. No. 31-1 at 1 ("Second Scadden Declaration") ¶ 4. An identical disclaimer was also included with the updated versions of the handbook and code issued in February 2010. See SMF ¶ 17; Dkt No. 27-15 at 1-6[8] ("2010 Handbook") (together with 1998, 2005, and 2009 Handbooks, "the Handbooks"); id. at 7-23 ("2010 Code") (together with the 1998, 2005, and 2009 Codes, "the Codes"); id. at 24 ("2010 Disclaimer) (together with the 1998, 2005, and 2009 Disclaimers, "the Disclaimers").

In late 2009, Plaintiff made multiple reports to supervisors regarding two employees' violations of the 2009 Code. See Compl. at 5, 14. Plaintiff alleges that Defendant failed to properly and fully investigate the substance of her reports. Dkt. No. 30 ("Memorandum Response") at 8-9. Plaintiff also alleges that she was retaliated against for making those reports, retaliation that included "a policy of non-communication and silence" by four of her supervisors, the removal of many of plaintiff's supervisory responsibilities, a written disciplinary warning regarding Plaintiff's

---

[7] Plaintiff initially argued that the 2009 Handbook and 2009 Code were separate documents, neither of which were incorporated into the other. SMF Resp. ¶ 46-48. In response, Defendant submitted a complete copy of the single document provided to employees that consisted of, *inter alia*, the 2009 Handbook and the 2009 Code. See Dkt. No. 31-1 at 3-62; see also Second Scadden Decl. Plaintiff does not deny that the copy provided by Defendant is accurate. See Dkt. No. 35 ("Sur-Reply") at 6. The Court therefore deems the joint distribution of the 2009 Code and 2009 Handbook to be an undisputed fact.

[8] The pagination corresponds to the page numbers assigned by ECF.

4

early departure from work, and the refusal of her supervisors to assist Plaintiff or call for help when she had chest pains and difficulty breathing. Compl. at 7-12, 17-18; see also SMF ¶¶ 46-48. As a result of the later incident and a shoulder injury from an at-work fall, Plaintiff went on medical leave in March 2010. SMF ¶¶ 49-50. Plaintiff alleges that Defendant further retaliated against her by failing to immediately offer her a position that she could perform with her health limitations and then terminating her after twenty-six weeks of medical leave. Mem. ¶ 57; Mem. Resp at 6, 17; Sur-Reply at 10-11.

On April 1, 2011, Plaintiff commenced this action in New York Supreme Court. Dkt No. 1-1 ("Complaint"). Defendant removed and then answered the Complaint. Dkt. Nos. 1; 5. Defendant subsequently filed the Motion as well as an accompanying Memorandum of law. Dkt. No. 27-5 ("Memorandum"). Plaintiff filed the Memorandum Response and the SMF Response, Defendant the Reply, and Plaintiff the Sur-Reply. Mem Resp.; SMF Resp.; Reply; Sur-Reply.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.  DISCUSSION**

"In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Baron v. Port Auth. of N.Y. and N.J., 271 F.3d 81, 85 (2d Cir. 2001) (internal quotation marks and citation omitted). Where employment is at will, there is no contractual limitation on the employer's freedom to terminate an employee's employment or to impose or modify any term or condition of that employment.[9] See id.; Daniel v. Long Island Hous. P'ship, Inc., No. 08-CV-01455, 2009 WL 702209, at *10 (E.D.N.Y. Mar. 13, 2009) ("As a general matter under New York law, a failure by an employer to follow its internal

---

[9] Of course, there are constitutional and statutory limitations on these employer freedoms. See Mulder v. Donaldson, Lufkin & Jenrette, 623 N.Y.S.2d 560, 564 (App. Div. 1995).

6

policies cannot form the basis of a breach of contract claim."); Sherman v. HarperCollins Publishers, Inc., No. 98 Civ. 2809, 1998 WL 437158, at * 3 (S.D.N.Y. July 31, 1998) (noting that, because the plaintiff was an employee-at-will, defendant could change or "simply not follow[]" its internal policies); Int'l Paper Co. v. Suwyn, 951 F. Supp. 445, 448 (S.D.N.Y. 1997); Gen. Elec. Technical Servs. Co. Inc. v. Clinton, 577 N.Y.S.2d 719, 720 (App. Div. 1991). A narrow and exclusive exception to this rule exists: an employer-at-will contractually limits its default freedom where: (1) an express written policy limits that freedom; (2) the employer makes the employee aware of this policy; and (3) the employee detrimentally and reasonably relies on the policy in accepting or continuing employment. See Baron, 271 F.3d at 85; Sherman, 1998 WL 437158, at *2-4. Where these elements are made out, an implied contract exists and the employee may bring a claim for a breach of that contract. See Baron, 271 F.3d at 85; see also De Petris v. Union Settlement Ass'n, Inc., 657 N.E.2d 269, 271 (N.Y. 1995). Plaintiff points to a combination of the Codes, her employment offer sheet, her initial interview, her performance evaluations, a poster, and a training video as an implied-in-fact contract that prohibited Defendant from retaliating against her for reporting violations of the Codes and mandated a thorough investigation of any such reports. See Generally Mem. Resp; Sur-Reply. But Plaintiff has not offered sufficient evidence that these communications satisfy the narrow exception to an employer-at-will's contractual freedom.

**A. Codes**

Plaintiff does not dispute that the Disclaimers and Acknowledgments explicitly disclaimed the creation of a contract. See, e.g., Mem. Resp. at 6. Employee manuals and handbooks containing similar disclaimer language have been deemed dispositive as to the impossibility of reasonably relying on their policies. See Baron, 271 F.3d at 85-86 (holding that, where employment manual

7

explicitly stated that it was "'not intended to create any rights or presumptions,'" any contrary understanding by the plaintiffs would have been objectively unreasonable); Junk v. Aon Corp., No. 07 Civ. 4640, 2007 WL 4292034, at *5 (S.D.N.Y. Dec. 3, 2007) ("Plaintiff's reliance upon the [anti-retaliation] provision cannot be considered objectively reasonable, particularly because of the disclaimer within the same document that clearly expresses [d]efendants' intention that it not be taken as a binding, contractual agreement."); Mirabella v. Turner Broad. Sys., Inc., No. 01 Civ. 5563, 2003 WL 21146657, at *2 (S.D.N.Y. May 19, 2003) ("[A]n express disclaimer of contractual rights in an employee manual bars an action for breach of contract based on the terms of the manual."); Lobosco v N.Y. Tel. Co./NYNEX, 751 N.E.2d 462, 464-65 (N.Y. 2001) (dismissing contract claim based on "Code of Business Conduct's" anti-retaliation provision where Code stated that it was "not a contract of employment and does not create any contractual right of any kind"; court noted that "[a]n employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer"); Ashe v Mohawk Val. Nursing Home, 701 N.Y.S.2d 536, 537 (App. Div. 1999) (finding that defendants were entitled to summary judgment on contract claim where employee handbook expressly provided that it was "'not intended to, and does not, constitute a contract'").

Plaintiff argues that the instant case is distinguishable because the Disclaimers and Acknowledgments applied only to the Handbooks and not to the Codes. See SMF Resp. ¶¶ 14-16. She therefore contends that she reasonably relied on the Codes' anti-retaliation and investigation provisions in beginning and continuing to work for Defendant as well as in reporting her co-workers' violations. See id.; Sur-Reply at 8; Mem. Resp at 7, 10-11.[10] But the premise of

---

[10] The pagination corresponds to the page numbers assigned by ECF.

Plaintiff's argument is flawed: the Acknowledgments and Disclaimers unambiguously covered the Code and its provisions, because: (1) both the Acknowledgments and Disclaimers explicitly applied to "policies" covered or included in the Handbooks; and (2) the Codes and their provisions unambiguously constituted such policies.

In the Acknowledgments, Plaintiff agreed that "*the policies stated in the Handbook* are only guidelines and that [she could] not rely upon them as creating any rights, contractual or otherwise." (emphasis added). Likewise, the 2005, 2009, and 2010 Disclaimers all applied to "[t]he policies contained within this Handbook."

Under the plain language of the Handbooks, the Codes and their provisions constituted policies stated in, or contained within, the Handbooks. See, e.g., 2005 Handbook at 4 ("When a question or concern is raised regarding a violation of our code of Business Conduct and Ethics or *any other policy* . . . .") (emphasis added); id. at 5 (discussing violation of company policies in a sidebar next to discussion of the Code); 2009 Handbook at 10 (noting that the "full text of all Jo-Ann policies is available in the Code of Business Conduct and Ethics and the Company Policy Manual" and discussing violation of Defendant's "code of Business Conduct and Ethics or any other policy"); 2010 Handbook at 5 (same). Moreover, the joint distribution of the Handbooks and Codes—the 2005 Handbook notes that a full copy of the 2005 Code is included in a pocket of the 2005 Handbook,[11] while the 2009 Handbook explicitly deems the 2009 Code an appendix—further

---

[11] Plaintiff argues that her initial receipt of the 2005 Code as an independent document renders her claim viable. See Sur-Reply at 6. As discussed *supra*, it is undisputed that at some point in 2005, Defendant issued the 2005 Handbook alongside the 2005 Code. At that point, Plaintiff could not reasonably have relied on the 2005 Code's provisions given the explicitly applicable Disclaimers and 2005 Acknowledgment. Thus, even if the independently issued 2005 Code constituted an express written policy limiting Defendant's freedom, Plaintiff would have to show detrimental reliance *before* the 2005 Handbook was issued. Cf. Frank Crystal & Co., Inc. v.

9

emphasized the applicability of the disclaimer language to the Codes. So too did the 2009 Disclaimer's placement after both the 2009 Handbook and the 2009 Code. Because the Disclaimers and Acknowledgments unambiguously applied to the Codes, Plaintiff cannot reasonably have relied upon the Codes' anti-retaliation and investigation provisions.

Defendant's explicit reservation of the right to unilaterally modify its policies at any time also renders any reliance on the Codes unreasonable. The 2005 Disclaimer states that "[t]he policies within this Handbook may be subject to change at any time at the discretion of Jo-Ann Stores, Inc.," while the 2009 and 2010 Disclaimers apply the same subject-to-change language to the "policies within this Handbook." Plaintiff likewise acknowledged that "[c]ompany policies and procedures may change." 2005 Acknowledgment. As discussed *supra*, all of this language unambiguously applies to the Code and its policies. Reliance upon a policy that is expressly subject to unilateral modification is unreasonable. See Baron, 271 F.3d at 84 n.1, 86 n.3; Maas v. Cornell Univ., 721 N.E.2d 966, 970 (N.Y. 1999) (finding that employee handbook did not constitute a contract where it implicitly stated that employer could unilaterally modify it any time, a provision the court deemed "hardly the harbinger of a legally binding . . . arrangement[]"); DePetris, 657 N.E.2d at 271 (finding that employee could not have reasonably relied on personnel procedures laid out in employment manual where employer "expressly reserved the right to revise the [m]anual").

---

Dillmann, 925 N.Y.S.2d 430, 432 (App. Div. 2011) ("Plaintiff may not recover damages for a loss resulting from detrimental reliance when the loss occurred after it was put on notice of the alleged false representation."). Plaintiff has, at most, alleged that she continued to work for Defendant in reliance on the independently issued 2005 Code. See Mem. Resp. at 12. This does not constitute detrimental reliance. See Dicocco v. Capital Area Cmty. Health Plan, Inc., 559 N.Y.S.2d 395, 397-98 (App. Div. 1990) (granting summary judgment on employee's breach-of-implied-contract claim where she did not prove that she foresook other job prospects to her detriment in reliance on just-cause provision in employment manual).

**B. Terms and Conditions of Employment**

Plaintiff also points to her "Terms and Conditions of Employment," which appears to be a written offer of employment, as a contract source. See Mem. Rep. at 5. But Plaintiff conflates the mere formation of a contract with the formation of a contract that prohibited Defendant from retaliating against her or mandated a full investigation of her reports. Plaintiff does not allege that any of the offer sheet's terms, which covered her salary and start date, even remotely related to retaliation or investigation. See id. Thus, even if the offer sheet constituted a contract, it cannot support Plaintiff's breach-of-contract claim.

**C. Poster, Video, Interview, and Evaluations**

Plaintiff argues that Defendant's contractual non-retaliation and investigation obligations also arose from her initial job interview, a poster, and a training video, in all of which Defendant "assured/promised/guaranteed that in reporting . . . violations, the Defendant would not tolerate retaliation and/or intimidation nor would the Plaintiff be terminated as a result of reporting such violation if she did so in good faith." Mem. Resp. at 6. But she does not provide any specific description of the non-retaliation or investigation portions of these communications, nor does she provide a copy of the poster and video. Plaintiff's conclusory descriptions are insufficient to withstand summary judgment. See O'Diah v. New York City, No. 02 Civ. 274, 2003 WL 22021921, at *3 (S.D.N.Y. Aug. 28, 2003).

Moreover, Plaintiff's specific descriptions of these communications indicate that Defendant informed employees only that they had to report violations of the Codes; not that they would be free from retaliation if they did so. See Mem. Resp. at 6 (noting that Defendant's anti-theft policy was explained at Plaintiff's interview and that an anti-theft poster listed 15 examples of reportable Code

11

violations). But language requiring employees to report violations cannot be read to contractually require Defendant not to retaliate if employees did so; Plaintiff has offered no support for her implicit contention that employers cannot require employees to do something and then punish them for doing it. See Sur-Reply at 8. For the same reason, Defendant's evaluation of Plaintiff's performance based on her compliance with Defendant's policies did not contractually obligate Defendant to refrain from retaliating against her for that compliance. See Sherman, 1998 WL 437158, at *2-4; Mem. Resp. at 7. Moreover, with the possible exception of the poster and the video, none of the communications to which Plaintiff points constitutes the *written* policy required to restrict an employer's default freedom to impose any term or condition of employment.

But even if all of these communications: (1) explicitly stated that employees would not be retaliated against for reporting violations and that all reports would be investigated; and (2) constituted written policies, Plaintiff cannot reasonably have relied on them. As Plaintiff acknowledges, these communications all constituted summaries or restatements of the Codes' non-retaliation and investigation provisions. See Mem. Resp. at 12 (noting that the "promise/assurance/guarantee *is* . . . [the anti-retaliation provisions of the Codes]" and then stating that this "promise/assurance guarantee" was "addressed" and "reaffirmed" in the other communications). As discussed *supra*, any reliance by Plaintiff on the Codes' provisions after the 2005 Handbook issued cannot have been reasonable. This renders reliance on mere restatements of those provisions unreasonable as well.[12]

Plaintiff's reliance on these communications is particularly unreasonable with respect to her

---

[12] As discussed *supra* in note 7, even if Plaintiff reasonably relied on these communications before the 2005 Handbook issued, she has offered no evidence that the reliance was detrimental.

12

claim that Defendant's termination of her employment constituted contractually forbidden retaliation. The Handbooks and Acknowledgments provided an exclusive means of limiting Defendant's right to terminate employees for any reason—a contract signed by Defendant's president—and explicitly told employees they could not to rely on any other oral or written representations purporting to do so.

Because Plaintiff has failed to point to any written non-retaliation or investigation policy upon which she reasonably and detrimentally relied, Defendant is entitled to summary judgment.

## V. FEES AND COSTS

Defendant also seeks an award of costs. See Mem. at 25. A prevailing litigant is ordinarily not entitled to an award of costs. See City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 124 n.4 (2005). Defendant offers no basis for its entitlement to such an award. See Mem. at 25. The Court therefore denies Defendant's request.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 27) is, to the extent it seeks summary judgement, **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 27) is, to the extent it seeks an award of costs, **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for Defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 17, 2013
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge